

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

SCJ:PEN:AFMLS
F. #2012R02302

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 14, 2014

By ECF

The Honorable Frederic Block
United States District Judge
Eastern District of New York
221 Cadman Plaza East
Brooklyn, New York  11201

        Re:    United States v. Robert Petrosyants
                  Criminal Docket No. 11 CR 591 (S-3) (FB)

Dear Judge Block:

        The government respectfully submits this sentencing memorandum (a) to request that the defendant Robert Petrosyants receive a sentence within the range applicable under the United States Sentencing Guidelines ("Guidelines") and (b) respond to Petrosyants' motion for a non-custodial sentence, which was filed on November 11, 2014.  Petrosyants is scheduled to be sentenced on November 14, 2014.

I.    INTRODUCTION

        A.    Background

        On November 10, 2013, Petrosyants was arrested based upon charges contained in an eleven-count Second Superseding Indictment, Criminal Docket No. 11 CR 591 (S-2), filed in the Eastern District of New York.  Petrosyants was charged in Count One of the indictment, which charged him, his twin brother, Zhan Petrosyants ("Zhan"), Lasha Goletiani, and Eldar Akhmedov with conspiracy to launder money in violation of 18 U.S.C. § 1956(h).  On February 24 2014, Petrosyants pleaded guilty to a one-count Superseding Information, Criminal Docket No. 11 CR 591 (S-2) ("Information"), charging him with a violation of 18 U.S.C. § 371 for conspiring with Zhan and Goletiani to cause a domestic financial institution to file CTRs containing material omissions and misstatements of fact, in violation of Title 31, United States Code, Sections 5324(a)(2) and 5324(d)(2).  The domestic financial institution was Belair Payroll Services, a check cashing store located in Flushing, NY ("Belair").[1]

---

        [1] On June 19, 2014, Belair and its owner, Craig Panzera, were sentenced in this Court pursuant to Belair's plea of guilty to a violation of Title 18, United States Code, Section 371

Under the plea agreement reached by the parties, Petrosyants' total adjusted offense level is 22. For purposes of the plea agreement, the parties assumed that Petrosyants fell within Criminal History Category I; therefore, his Guideline sentence is 41 to 51 months incarceration. In the Sentence Recommendation ("Recommendation") prepared by the Department of Probation ("Probation"), Probation determined that Petrosyants is in Criminal History Category II and that his total offense level is 31. Applying all potential reductions, Petrosyants' adjusted offense level is 27, resulting in a Guideline Sentence of 78-97 months. Because 18 U.S.C. Section 371 carries a maximum sentence of 60 months imprisonment, Probation recommends that the Court sentence Petrosyants to the statutory maximum sentence of five years.[2]

B.  Facts

The Information contains a detailed description of Petrosyants's criminal conduct and facts pertinent to sentencing. In sum and substance, between approximately May 2009 and June 2011, Petrosyants engaged in a scheme with Zhan and Lasha Goletiani to cash at Belair checks collected by the medical billing company he operated that were made payable to shell corporations. A large number of the shell corporations were established in the names of students in the United States on short-term non-immigrant visas called "J-1 visas." The companies purported to be engaged in medical equipment sales and services related to the operation of medical clinics, including, but not limited to, office supplies, advertising, computer and billing-related services. In truth and in fact, these companies engaged in little, if any, legitimate business and maintained few, if any assets. As Petrosyants stipulated in the plea agreement, at the time this conduct took place, Petrosyants was aware that the cash received from the checks cashed at Belair came from illicit funds. Agreement at ¶2.[3]

At certain times, Zhan and Goletiani presented checks to be cashed at Belair which totaled more than $10,000 in a single day, which would trigger the filing of a CTR. To prevent detection of their check cashing activity by the government, the conspirators caused false CTRs to be filed for those transactions which made it appear that the check cashing transactions were conducted on behalf of the shell corporations when in truth and in fact the transactions were

---

(conspiracy to file false CTRs) and Panzera's plea of guilty to a violation of Title 31, United States Code, Sections 5318(h)(2) and 5322(a) (failure to maintain an effective anti-money laundering program) and Title 18, United States Code, Section 371 (conspiracy to defraud the United States as contemplated by *United States v. Klein*, 247 F.2d 908 (2d Cir. 1957) ("Klein conspiracy")).

[2] The Government takes no position on either the Recommendation or the Pre-Sentence Report ("PSR") prepared by Probation, and it stands behind the plea agreement reached by the parties.

[3] The plea agreement indicates that the relevant Sentencing Guidelines provision is §2S1.1(b)(1)(A). That is a typographical error. The relevant Guidelines provision is 2S1.3(b)(1)(A).

conducted by Zhan and Goletiani at Petrosyants's direction. In the plea agreement, Petrosyants stipulated to an adjustment to his Guidelines calcaluation for his aggravating role as an organizer of the criminal activity pursuant to U.S.S.G. § 3B1.1(c). Agreement at ¶ 2.

    C.    <u>Sentencing Letter</u>

On November 11, 2014, Petrosyants filed with this Court a Sentencing Letter ("Letter") requesting a non-guideline, non-custodial sentence in connection with his guilty plea to the Information. Letter at 1. Petrosyants offers several arguments in support of his claim that he should receive a non-custodial sentence, including, his lack of previous felony convictions, the fact that 18 U.S.C. § 371 carries a five-year statutory maximum sentence, the lack of violence or individual loss associated with the charge to which he pleaded guilty, the sentence received by other defendants, his family and community ties, including a stable job and home life, and his volunteer service to the community. Letter at 3-7. In addition, Petrosyants notes that if he receives a prison sentence, he may suffer further adverse consequences because of his immigration status. Letter at 7 n.6. None of Petrosyants' arguments justify the imposition of a non-custodial sentence in this case. Therefore, the government asks that this Court impose on Petrosyants a custodial sentence in the advisory Guideline range of 41-51 months.

II.    ARGUMENT

In imposing sentence on a defendant, "the sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 555 U.S. 350, 351, 129 S. Ct. 890, 891-92, 172 L. Ed. 2d 719 (2009). To this point, no party providing an opinion on sentencing in this case has determined that the applicable Guideline sentence is less than 41 months incarceration, and Petrosyants's arguments for a non-custodial sentence raise no factors under 18 U.S.C. § 3553(a) that would justify a variance from the Guideline sentence agreed upon by the parties in the plea agreement.

    A.    Petrosyants Cannot Use Craig Panzera's Sentence as Justification for a <u>Non-Custodial Sentence in This Case</u>

Petrosyants suggests that he should receive a non-custodial sentence because Craig Panzera received a non-custodial sentence. Petrosyants seems to be arguing that imposing a prison sentence on him and not on Panzera would violate the directive "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Panzera, however, was not a similarly situated to the defendant. As the Court noted during Panzera's sentencing hearing, the Court's sentence in his case was motivated in large part by Panzera's medical condition in which he suffered from serious cognitive impairment due to an accident and other health issues. Criminal Docket 11 CR 591 Hearing Tr. 10:3-7, 16:12-22, June 19, 2014 (attached hereto as Exhibit A). Also, the deterrence and punishment resulting from the payment of a large forfeiture against Panzera and his company Belair (more than $3 million) and additional restitution of nearly $1 million factored into the Court's decision to sentence Panzera to probation. *Id*. at 16:23-17:3.

3

Petrosyants cannot point to a similar medical condition warranting a non-custodial sentence, nor can he point to financial penalty that is anywhere near as large as the penalty Panzera incurred.[4] Indeed, Probation recognized that Panzera and Petrosyants were not similarly situated through its sentencing recommendations: whereas Probation recommended a term of probation for Panzera, it has recommended a term of 60 months incarceration for Petrosyants. For these reasons, Petrosyants's comparison to Panzera's sentence is inapplicable.

> B. Petrosyants' Arguments Regarding Potentially Negative Consequences Due to His Immigration Status do not Justify a Non-Custodial Sentence

In his Letter, Mr. Petrosyants describes several negative outcomes that he may face due to his status as a non-citizen, including ineligibility for early release programs, and the prospect of spending time in an immigration facility once he serves whatever sentence the Court chooses to impose on him. The consequences of his immigration status are insufficient to justify a variance under 18 U.S.C. 3553.

Within the context of a downward departure from the Sentencing Guidelines, the Second Circuit has ruled that collateral consequences of deportation such as those cited by the defendant are not appropriate grounds for departure. See United States v. Restrepo, 999 F.2d 640, 646 (2d Cir. 1993) (overturning a district court judge's downward departure in part based upon a contemplated period of incarceration in INS custody longer than that of the sentence in the criminal case); see also Rasool v. U.S., 1999 WL 441480 (E.D.N.Y. 1999) (Dearie, J., citing Restrepo to recognize that a collateral consequence of a defendant's status as a deportable alien is not grounds for a downward departure). In the instant case, the defendant does not face any extraordinary consequences of his conviction other than the ordinary issues faced by any non-citizen convicted of a felony for which deportation may be ordered.

---

[4] Petrosyants and his co-defendants Zhan and Goletiani agreed to forfeiture of $667, 446.08, for which they are jointly and severally liable.

4

III.     CONCLUSION

        For the foregoing reasons, the Court should impose on Petrosyants a sentence within the Guideline range calculated and adopted by the parties and deny his motion for a non-custodial sentence.

        Respectfully submitted,

        LORETTA E. LYNCH
        United States Attorney

By:   _____
        Patricia E. Notopoulos
        Assistant U.S. Attorney
        (718) 254-6354

        JAIKUMAR RAMASWAMY
        Chief, Asset Forfeiture and
        Money Laundering Section

By:   _____
        Kevin G. Mosley
        J. Randall Warden
        Trial Attorneys